# CHRISTIANSBURG GARMENT CO. *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

No. 76–1383.  Argued November 28–29, 1977—Decided January 23, 1978

*William W. Sturges* argued the cause for petitioner. With him on the brief was *William B. Poff*.

*Thomas S. Martin* argued the cause for respondent. With him on the brief were *Solicitor General McCree, Deputy Solicitor General Wallace, Abner W. Sibal, Joseph T. Eddins,* and *Beatrice Rosenberg.**

MR. JUSTICE STEWART delivered the opinion of the Court.

Section 706 (k) of Title VII of the Civil Rights Act of 1964 provides:

"In any action or proceeding under this title the court,

---

*\*Robert J. Hickey, G. Brockwel Heylin, Stephen A. Bokat, Stanley T. Kaleczyc, Jr.,* and *Lawrence B. Kraus* filed a brief for the National Chamber Litigation Center as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *Charles A. Bane, Thomas D. Barr, Armand Derfner, Norman Redlich, Robert A. Murphy, Richard T. Seymour,* and *William E. Caldwell* for the Lawyers' Committee for Civil Rights under Law; and by *Jack Greenberg, James M. Nabrit III, Charles Stephen Ralston, Melvyn R. Leventhal,* and *Eric Schnapper* for the NAACP Legal Defense & Educational Fund, Inc.

*Robert E. Williams, Douglas S. McDowell,* and *Kenneth C. McGuiness* filed a brief for the Equal Employment Advisory Council as *amicus curiae.*

in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." [1]

The question in this case is under what circumstances an attorney's fee should be allowed when the defendant is the prevailing party in a Title VII action—a question about which the federal courts have expressed divergent views.

I

Two years after Rosa Helm had filed a Title VII charge of racial discrimination against the petitioner Christiansburg Garment Co. (company), the Equal Employment Opportunity Commission notified her that its conciliation efforts had failed and that she had the right to sue the company in federal court. She did not do so. Almost two years later, in 1972, Congress enacted amendments to Title VII.[2] Section 14 of these amendments authorized the Commission to sue in its own name to prosecute "charges pending with the Commission" on the effective date of the amendments. Proceeding under this section, the Commission sued the company, alleging that it had engaged in unlawful employment practices in violation of the amended Act. The company moved for summary judgment on the ground, *inter alia,* that the Rosa Helm charge had not been "pending" before the Commission when the 1972 amendments took effect. The District Court agreed, and granted summary judgment in favor of the company. 376 F. Supp. 1067 (WD Va).[3]

---

[1] Section 706 (k) provides in full: "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 78 Stat. 261, 42 U. S. C. § 2000e–5 (k).

[2] Equal Employment Opportunity Act of 1972, Pub. L. 92–261, 86 Stat. 103.

[3] The Commission argued that charges as to which no private suit had been brought as of the effective date of the amendments remained "pend-

The company then petitioned for the allowance of attorney's fees against the Commission pursuant to § 706 (k) of Title VII. Finding that "the Commission's action in bringing the suit cannot be characterized as unreasonable or meritless," the District Court concluded that "an award of attorney's fees to petitioner is not justified in this case."[4]  A divided Court of Appeals affirmed, 550 F. 2d 949 (CA4), and we granted certiorari to consider an important question of federal law, 432 U. S. 905.

## II

It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees. *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240. Congress has provided only limited exceptions to this rule "under selected statutes granting or protecting various federal rights." *Id.,* at 260. Some of these statutes make fee awards mandatory for prevailing plaintiffs;[5] others make awards permissive but limit them to certain parties,

---

ing" before the Commission so long as the complaint had not been dismissed and the dispute had not been resolved through conciliation. The Commission supported its construction of § 14 with references to the legislative history of the 1972 amendments.

The District Court concluded that when Rosa Helm was notified in 1970 that conciliation had failed and that she had a right to sue the company, the Commission had no further action legally open to it, and its authority over the case terminated on that date. Section 14's reference to "pending" cases was held "to be limited to charges still in the process of negotiation and conciliation" on the effective date of the 1972 amendments. 376 F. Supp., at 1074.

The District Court rejected on the merits two additional grounds advanced by the company in support of its motion for summary judgment.

[4] The opinion of the District Court dealing with the motion for attorney's fees is reported at 12 FEP Cases 533.

[5] See, *e. g.,* Clayton Act, 38 Stat. 731, 15 U. S. C. § 15; Fair Labor Standards Act of 1938, 52 Stat. 1069, as amended, 29 U. S. C. § 216 (b); Packers and Stockyards Act, 42 Stat. 165, 7 U. S. C. § 210 (f); Truth in Lending Act, 82 Stat. 157, 15 U. S. C. § 1640 (a); and Merchant Marine Act, 1936, 49 Stat. 2015, 46 U. S. C. § 1227.

usually prevailing plaintiffs.[6]   But many of the statutes are
more flexible, authorizing the award of attorney's fees to either
plaintiffs or defendants, and entrusting the effectuation of the
statutory policy to the discretion of the district courts.[7]   Sec-
tion 706 (k) of Title VII of the Civil Rights Act of 1964 falls
into this last category, providing as it does that a district court
may in its discretion allow an attorney's fee to the prevailing
party.

   In *Newman* v. *Piggie Park Enterprises,* 390 U. S. 400, the
Court considered a substantially identical statute authorizing
the award of attorney's fees under Title II of the Civil Rights
Act of 1964.[8]   In that case the plaintiffs had prevailed, and
the Court of Appeals had held that they should be awarded
their attorney's fees "only to the extent that the respondents'
defenses had been advanced 'for purposes of delay and not in
good faith.' "  *Id.,* at 401.   We ruled that this "subjective
standard" did not properly effectuate the purposes of the
counsel-fee provision of Title II.   Relying primarily on the
intent of Congress to cast a Title II plaintiff in the role of "a
'private attorney general,' vindicating a policy that Congress
considered of the highest priority," we held that a prevailing
plaintiff under Title II "should ordinarily recover an attorney's
fee unless special circumstances would render such an award

---

[6] See, *e. g.,* Privacy Act of 1974, 88 Stat. 1897, 5 U. S. C. § 552a (g)
(2) (B)  (1976 ed.) ;  Fair Housing Act of 1968, 82 Stat. 88, 42 U. S. C.
§ 3612 (c).

[7] See, *e. g.,* Trust Indenture Act of 1939, 53 Stat. 1171, 15 U. S. C.
§ 77*ooo* (e) ;  Securities Exchange Act of 1934, 48 Stat. 889, 897, 15 U. S. C.
§§ 78i (e), 78r (a) ;  Federal Water Pollution Control Act, 86 Stat. 889, 33
U. S. C. § 1365 (d)  (1970 ed., Supp. V) ;  Clean Air Act, 84 Stat. 1706, 42
U. S. C. § 1857h–2 (d) ;  Noise Control Act of 1972, 86 Stat. 1244, 42
U. S. C. § 4911 (d)  (1970 ed., Supp. V).

[8] "In any action commenced pursuant to this subchapter, the court, in
its discretion, may allow the prevailing party, other than the United
States, a reasonable attorney's fee as part of the costs, and the United
States shall be liable for costs the same as a private person."   42 U. S. C.
§ 2000a–3 (b).

unjust." *Id.*, at 402. We noted in passing that if the objective of Congress had been to permit the award of attorney's fees only against defendants who had acted in bad faith, "no new statutory provision would have been necessary," since even the American common-law rule allows the award of attorney's fees in those exceptional circumstances. *Id.*, at 402 n. 4.[9]

In *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, the Court made clear that the *Piggie Park* standard of awarding attorney's fees to a successful plaintiff is equally applicable in an action under Title VII of the Civil Rights Act. 422 U. S., at 415. See also *Northcross* v. *Memphis Board of Education,* 412 U. S. 427, 428. It can thus be taken as established, as the parties in this case both acknowledge, that under § 706 (k) of Title VII a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances.[10]

## III

The question in the case before us is what standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant* in a Title VII action. Not surprisingly, the parties in addressing the question in their briefs and oral arguments have taken almost diametrically opposite positions.[11]

The company contends that the *Piggie Park* criterion for a successful plaintiff should apply equally as a guide to the

---

[9] The propriety under the American common-law rule of awarding attorney's fees against a losing party who has acted in bad faith was expressly reaffirmed in *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240, 258–259.

[10] *Chastang* v. *Flynn & Emrich Co.,* 541 F. 2d 1040, 1045 (CA4) (finding "special circumstances" justifying no award to prevailing plaintiff); *Carrion* v. *Yeshiva Univ.,* 535 F. 2d 722, 727 (CA2); *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714, 716 (CA5); *Parham* v. *Southwestern Bell Telephone Co.,* 433 F. 2d 421, 429–430 (CA8).

[11] Briefs by *amici* have also been filed in support of each party.

award of attorney's fees to a successful defendant. Its submission, in short, is that every prevailing defendant in a Title VII action should receive an allowance of attorney's fees "unless special circumstances would render such an award unjust." [12] The respondent Commission, by contrast, argues that the prevailing defendant should receive an award of attorney's fees only when it is found that the plaintiff's action was brought in bad faith. We have concluded that neither of these positions is correct.

A

Relying on what it terms "the plain meaning of the statute," the company argues that the language of § 706 (k) admits of only one interpretation: "A prevailing defendant is entitled to an award of attorney's fees on the same basis as a prevailing plaintiff." But the permissive and discretionary language of the statute does not even invite, let alone require, such a mechanical construction. The terms of § 706 (k) provide no indication whatever of the circumstances under which either a plaintiff *or* a defendant should be entitled to attorney's fees. And a moment's reflection reveals that there are at least two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant.

First, as emphasized so forcefully in *Piggie Park*, the plaintiff is the chosen instrument of Congress to vindicate "a policy that Congress considered of the highest priority." 390 U. S., at 402. Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law. As the Court of Appeals clearly perceived, "these policy considerations which support the award of fees to a

---

[12] This was the view taken by Judge Widener, dissenting in the Court of Appeals, 550 F. 2d 949, 952 (CA4). At least two other federal courts have expressed the same view. *EEOC* v. *Bailey Co.*, 563 F. 2d 439, 456 (CA6); *United States* v. *Allegheny-Ludlum Industries*, 558 F. 2d 742, 744 (CA5).

prevailing plaintiff are not present in the case of a prevailing defendant." 550 F. 2d, at 951. A successful defendant seeking counsel fees under § 706 (k) must rely on quite different equitable considerations.

But if the company's position is untenable, the Commission's argument also misses the mark. It seems clear, in short, that in enacting § 706 (k) Congress did not intend to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action. As pointed out in *Piggie Park,* if that had been the intent of Congress, no statutory provision would have been necessary, for it has long been established that even under the American ·common-law rule attorney's fees may be awarded against a party who has proceeded in bad faith.[13]

Furthermore, while it was certainly the policy of Congress that Title VII plaintiffs should vindicate "a policy that Congress considered of the highest priority," *Piggie Park,* 390 U. S., at 402, it is equally certain that Congress entrusted the ultimate effectuation of that policy to the adversary judicial process, *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355. A fair adversary process presupposes both a vigorous prosecution and a vigorous defense. It cannot be lightly assumed that in enacting § 706 (k), Congress intended to distort that process by giving the private plaintiff substantial incentives to sue, while foreclosing to the defendant the possibility of recovering his expenses in resisting even a groundless action unless he can show that it was brought in bad faith.

---

[13] See n. 9, *supra.* Had Congress provided for attorney's fee awards only to successful plaintiffs, an argument could have been made that the congressional action had pre-empted the common-law rule, and that, therefore, a successful defendant could not recover attorney's fees even against a plaintiff who had proceeded in bad faith. Cf. *Byram Concretanks, Inc.* v. *Warren Concrete Products Co. of New Jersey,* 374 F. 2d 649, 651 (CA3). But there is no indication whatever that the purpose of Congress in enacting § 706 (k) in the form that it did was simply to foreclose such an argument.

## B

The sparse legislative history of § 706 (k) reveals little more than the barest outlines of a proper accommodation of the competing considerations we have discussed. The only specific reference to § 706 (k) in the legislative debates indicates that the fee provision was included to "make it easier for a plaintiff of limited means to bring a meritorious suit." [14] During the ,Senate floor discussions of the almost identical attorney's fee provision of Title II, however, several Senators explained that its allowance of awards to defendants would serve "to deter the bringing of lawsuits without foundation," [15] "to discourage frivolous suits," [16] and "to diminish the likelihood of unjustified suits being brought." [17] If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis. The Court of Appeals for the District of Columbia Circuit seems to have drawn the maximum significance from the Senate debates when it concluded:

> "[From these debates] two purposes for § 706 (k) emerge. First, Congress desired to 'make it easier for a plaintiff of limited means to bring a meritorious suit' . . . . But second, and equally important, Congress intended to 'deter the bringing of lawsuits without foundation' by providing that the 'prevailing party'—be it plaintiff or defendant—could obtain legal fees." *Grubbs* v. *Butz*, 179 U. S. App. D. C. 18, 20, 548 F. 2d 973, 975.

The first federal appellate court to consider what criteria should govern the award of attorney's fees to a prevailing

---

[14] Remarks of Senator Humphrey, 110 Cong. Rec. 12724 (1964).
[15] Remarks of Senator Lausche, *id.*, at 13668.
[16] Remarks of Senator Pastore, *id.*, at 14214.
[17] Remarks of Senator Humphrey, *id.*, at 6534.

Title VII defendant was the Court of Appeals for the Third Circuit in *United States Steel Corp.* v. *United States,* 519 F. 2d 359. There a District Court had denied a fee award to a defendant that had successfully resisted a Commission demand for documents, the court finding that the Commission's action had not been " 'unfounded, meritless, frivolous or vexatiously brought.' " *Id.,* at 363. The Court of Appeals concluded that the District Court had not abused its discretion in denying the award. *Id.,* at 365. A similar standard was adopted by the Court of Appeals for the Second Circuit in *Carrion* v. *Yeshiva University,* 535 F. 2d 722. In upholding an attorney's fee award to a successful defendant, that court stated that such awards should be permitted "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Id.,* at 727.[18]

To the extent that abstract words can deal with concrete cases, we think that the concept embodied in the language adopted by these two Courts of Appeals is correct. We would qualify their words only by pointing out that the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post*

---

[18] At least three other Circuits are in general agreement. See *Bolton* v. *Murray Envelope Corp.,* 553 F. 2d 881, 884 n. 2 (CA5) ; *Grubbs* v. *Butz,* 179 U. S. App. D. C. 18, 20–21, 548 F. 2d 973, 975–976; *Wright* v. *Stone Container Corp.,* 524 F. 2d 1058, 1063–1064 (CA8).

*hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

That § 706 (k) allows fee awards only to *prevailing* private plaintiffs should assure that this statutory provision will not in itself operate as an incentive to the bringing of claims that have little chance of success.[19] To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.[20]

---

[19] See remarks of Senator Miller, 110 Cong. Rec. 14214 (1964), with reference to the parallel attorney's fee provision in Title II.

[20] Initially, the Commission argued that the "costs" assessable against the Government under § 706 (k) did not include attorney's fees. See, *e. g., United States Steel Corp.* v. *United States,* 519 F. 2d 359, 362 (CA3); *Van Hoomissen* v. *Xerox Corp.,* 503 F. 2d 1131, 1132–1133 (CA9). But the Courts of Appeals rejected this position and, during the

## IV

In denying attorney's fees to the company in this case, the District Court focused on the standards we have discussed. The court found that "the Commission's action in bringing the suit cannot be characterized as unreasonable or meritless" because "the basis upon which petitioner prevailed was an

course of appealing this case, the Commission abandoned its contention that it was legally immune to adverse fee awards under § 706 (k). 550 F. 2d, at 951.

It has been urged that fee awards against the Commission should rest on a standard different from that governing fee awards against private plaintiffs. One *amicus* stresses that the Commission, unlike private litigants, needs no inducement to enforce Title VII since it is required by statute to do so. But this distinction between the Commission and private plaintiffs merely explains why Congress drafted § 706 (k) to preclude the recovery of attorney's fees by the Commission; it does not support a difference in treatment among private and Government plaintiffs when a prevailing defendant seeks to recover his attorney's fees. Several courts and commentators have also deemed significant the Government's greater ability to pay adverse fee awards compared to a private litigant. See, *e. g., United States Steel Corp.* v. *United States, supra,* at 364 n. 24; Heinsz, Attorney's Fees for Prevailing Title VII Defendants: Toward a Workable Standard, 8 U. Toledo L. Rev. 259, 290 (1977); Comment, Title VII, Civil Rights Act of 1964: Standards for Award of Attorney's Fees to Prevailing Defendants, 1976 Wis. L. Rev. 207, 228. We are informed, however, that such awards must be paid from the Commission's litigation budget, so that every attorney's fee assessment against the Commission will inevitably divert resources from the agency's enforcement of Title VII. See 46 Comp. Gen. 98, 100 (1966); 38 Comp. Gen. 343, 344–345 (1958). The other side of this coin is the fact that many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights. In short, there are equitable considerations on both sides of this question. Yet § 706 (k) explicitly provides that "the Commission and the United States shall be liable for costs the same as a private person." Hence, although a district court may consider distinctions between the Commission and private plaintiffs in determining the reasonableness of the Commission's litigation efforts, we find no grounds for applying a different general standard whenever the Commission is the losing plaintiff.

issue of first impression requiring judicial resolution" and because the "Commission's statutory interpretation of § 14 of the 1972 amendments was not frivolous." The court thus exercised its discretion squarely within the permissible bounds of § 706 (k). Accordingly, the judgment of the Court of Appeals upholding the decision of the District Court is affirmed.

*It is so ordered.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.